**SO ORDERED.**

**SIGNED this 27th day of March, 2013.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

_____

**PUBLISHED**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| QUINCY RAY STULL | ) | Case No. 12-11696 |
| | ) | **Chapter 13** |
| Debtor. | ) | |
| _____ | ) | |

## ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

Chapter 13 allows debtors to propose plans that discriminate between holders of unsecured claims so long as the discrimination is not "unfair."[1] This means that for appropriate reasons, debtors may propose to pay one unsecured claim on more favorable terms than another. The Code expressly forbids the payment of interest on an unsecured nondischargeable claim unless all of the other

---

[1] 11 U.S.C. § 1322(b)(1). Unless otherwise indicated, all statutory references are to the Bankruptcy Code, as amended, Title 11 U.S.C. § 101 *et seq.*

allowed claims are paid in full.[2] Quincy Stull proposes to treat his nondischargeable student loan more favorably than his other unsecured creditors by paying it in full with interest over the plan's duration. While this proposed discrimination may be "fair," his proposal to pay interest on the student loan claim without paying the other unsecured creditors in full violates § 1322(b)(10) and cannot be approved. Accordingly, confirmation of his plan must be DENIED.[3]

**Facts**[4]

Quincy Stull filed this chapter 13 case on June 22, 2012. He is an above-median debtor. He proposed to pay the Trustee 60 payments of $385 per month.[5] His monthly disposable income as calculated on Form B22C, Line 59 is $129.01.[6] He owes $3,722 to the U.S. Department of Education on a student loan that the parties agree would be excepted from his discharge under § 1328(a)(2) and § 523(a)(8). The parties stipulated that unsecured claims in the case, including the student loan claim, total $20,861.[7] Stull proposes that he will pay his projected disposable income

---

[2] § 1322(b)(10).

[3] The chapter 13 trustee Laurie B. Williams appears by her staff attorney Karin N. Tollefson. The debtor appears by his counsel, David P. Eron.

[4] The Trustee and the debtor stipulated to the facts that govern this decision and these findings, except as noted, are based on that stipulation. *See* Dkt. 25.

[5] Dkt. 25-2 (Stipulation Ex. B)

[6] This monthly amount multiplied by 60 equals an unsecured pot of $7,740.60 as set forth in the debtor's plan, paragraph 1.c. The stipulations provide that non-student loan general unsecured creditors will receive $8,440.90, a difference of some $700 that is unexplained. The Court's calculations herein will utilize the stipulated $8,440.90 figure.

[7] Subtracting the amount of the secured claim filed in the case from the total amount of the claims shown on the Claims Register yields a remainder that is $10 less than what the stipulation provides. This difference appears to be attributable to the varying amount of the student loan debt. The proof of claim shows a student loan debt of $3,722 while the plan and Schedule F list the student loan debt at $3,732. For purposes of the calculations in this opinion,

into the plan for the benefit of the unsecured creditors, but that the student loan claim will be paid separately from additional funds. The student loan will be paid in full, plus interest at 4.75 per cent.[8] According to the stipulations, the non-student loan unsecured creditors will receive $8,440 or a dividend of 40.462 percent if the debtor is permitted to separately pay the student loan as proposed.[9] The stipulations do not reflect what the remaining terms of the two student loans are, nor is there any information in the record concerning the amount of the scheduled payments due on the loans. The absence of this information makes it unclear whether the plan treatment of the student loan debt is proposed under § 1322(b)(5) as a cure and maintenance of long term debt.

The stipulated dividend calculation seems to be incorrect. If the non-student loan creditors whose claims total $17,139 ($20,861 - $3,722) receive $8,440, their dividend will be 49.24 percent while the student loan creditor's dividend will be 100 percent plus interest. On the other hand, if the student loan creditor were to participate in the unsecured distribution, the total dividend would be 40.46 percent,[10] yielding the non-student loan creditors $6,934 and the student loan creditor

---

the Court accepts the figure of $20,861 for total general unsecured claims and will utilize $3,722 as the amount of the student loan debt.

[8] The U.S. Department of Education's proof of claim in the amount of $3,722.27 states that the contract rate on this claim is only 2.39%. *See* Claim No. 6-1 at Dkt. 25-3 (Stipulation Ex. C). Nothing in the briefs explains the difference between that and what the debtor proposes to pay.

[9] The parties stipulate the admissibility of Exhibit D, the Trustee's "Plancalc" table showing what claimants may expect to receive on their claims. *See* Dkt. 25-4. (What is unclear here is that the Plancalc refers to the student loan claim being paid separately and the unsecured claims being paid based on a total amount of $20,861 while the body of the stipulation (and the claims register) reflect that the whole unsecured pool, including the student loan, only totals $20,861. For the purposes of this order, I will assume that $20,861 represents all of the allowed unsecured claims including the student loan claim.

[10] $8,440 ÷ $20,861 = 40.46%.

Case 12-11696    Doc# 29    Filed 03/27/13    Page 3 of 12

$1,506.[11] If the debtor were somehow prohibited from paying "discretionary" income toward the student loan, at discharge, he would still owe the U.S. Department of Education about $2,216 plus accrued interest.[12] Thus, the effect of the proposed discriminatory treatment is to direct $2,216 of the debtor's disposable income toward a nondischargeable claim and to reduce the unsecured creditors' dividend by about 9 percent.[13]

The Trustee argues that this treatment amounts to unfair discrimination that is barred by § 1322(b)(1) and § 1325(a)(1). She also notes that as the debtor is not paying his claims in full, the student loan claim should not receive interest under § 1322(b)(10). The debtor suggests that his interest in receiving a fresh start, combined with the fact that he is paying exactly what the Code requires him to pay the unsecured creditors, makes the discrimination permissible. His brief makes no mention of the § 1322(b)(10) problem.

**Analysis**

*Unfair Discrimination under § 1322(b)(1).*

The Trustee's principal objection to the plan is that it unfairly discriminates among unsecured claims by paying the nondischargeable claim in full while paying the rest of the unsecured creditors pro rata. The debtor essentially argues that because he proposes to pay the unsecured creditors all that they are required to be repaid under the Bankruptcy Code – his projected disposable income – he should be permitted to pay the student loan in full. He suggests that the adoption of

---

[11] The non-student loan debt comprises 82.16% of total general unsecured claims ($17,139 ÷ 20,861) and 82.16% of an $8,440 distribution equals $6,934. The student loan debt comprises 17.84% of the general unsecured claims ($3,722 ÷ $20,861) and 17.84% of the $8,440 distribution equals $1,506.

[12] $3,722 - $1,506 = $2,216.

[13] 49.24% - 40.46% = 8.78%

-4-

BAPCPA displaces the courts' prior formulations for determining whether unfair discrimination has occurred. The Trustee says that any dividend differential that favors a nondischargeable debt unfairly discriminates against the unsecured creditors and should be barred.

Before BAPCPA was enacted, many courts weighed in on whether discriminatory treatment favoring a nondischargeable student loan was fair and passed muster under § 1322(b)(1). As both parties note, "unfair discrimination" is not defined in the Code, leaving courts to divine or devise tests to determine whether the discriminatory treatment is indeed unfair. This Court visited that topic in 2003 in *In re Mason*.[14] There I reviewed the different tests advanced by various courts and applied the "Baseline Test" found in *In re Bentley* as the one that best reflected the aims of the Code as it existed then.[15] The baseline test assesses whether, despite the differences in treatment, the plan offers each class benefits and burdens that are equivalent to what it would receive at the baseline, the discrimination can be permitted.[16] The baseline is defined by the treatment the creditors in the disadvantaged class would receive without the separate classification. This requires determining whether the plan honors the four Code-based principles of (i) equality of distribution; (ii) the non-priority of student loans; (iii) whether the contributions to those loans are mandatory or optional; and (iv) whether the debtor's interest in gaining a fresh start justifies the discrimination. Because student loans are not accorded statutory priority, anything they receive over what they would take in a pro rata distribution without the discrimination, should come from assets not required to be

---

[14] 300 B.R. 379 (Bankr. D. Kan. 2003).

[15] *Id.* at 384 (describing the baseline test) and 387 (finding the baseline test "most loyal to the objective goals and motivations of Chapter 13 and the Bankruptcy Code.")

[16] *In re Bentley*, 266 B.R. 229, 240 (1st Cir. BAP 2001).

contributed to the plan and thus not detract from the unsecured creditors' take.[17] Otherwise, the unsecured creditors would bear the burden of paying the nondischargeable claim.

Nothing in the enactment of BAPCPA renders the *Bentley* test obsolete. BAPCPA significantly altered the discretion that judges once wielded when determining whether a debtor was devoting his or her disposable income to a plan by defining what above-median debtors pay their unsecured creditors as their projected disposable income (PDI). Congress decreed that, for above-median debtors, PDI is determined by a mechanical test found in § 707(b)(2) and (3) and applied to chapter 13 by § 1325(b)(2) and (3). But the 2005 amendments did not displace the equal distribution concept, nor did they prioritize student loans. And by imposing mechanically-determined projected disposable income requirements on above-median debtors, § 1325(b) actually makes it easier to determine whether these debtors are committing disposable or discretionary income to their nondischargeable obligations by liquidating the amount of disposable income the debtors must pay to the unsecured creditors.

As it must, Stull's plan proposes committing all of his PDI to his unsecured creditors. The stipulated total amount proposed to be paid to the unsecured creditors is $8,440, yielding the non-student loan creditors a dividend of 49 percent. But Stull generates more income than the disposable income calculation yields. So, using funds other than his PDI, Stull proposes to pay the $3,722 student loan claim in full with interest, yielding a 100 percent dividend to that creditor. Because he is not using PDI, the non-student loan creditors will receive not a dime less than they would at the baseline while the student loan will be paid in full.

A summary comparison of the effect on unsecured creditors under the proposed plan

---

[17] *Id*. at 243.

-6-

treatment and the treatment without separately classifying the student loan claim, is set forth below:

**Proposed Plan Treatment:**

| | |
|---|---|
| Total student loan debt | $3,722 |
| Total non-student loan unsecured debt: | $17,139 |
| Proposed distribution to non-student loan unsecured debt: | $8,440 |
| % Dividend to non-student loan unsecured creditors | 49.24% |
| % Dividend to student loan creditor (paid separately) | 100.00% |

**Baseline Treatment Without Separate Classification:**

| | |
|---|---|
| Total student loan debt: | $3,722 |
| Total non-student loan unsecured debt | $17,139 |
| Total unsecured debt | $20,861 |
| Proposed distribution to total unsecured debt | $8,440 |
| % Dividend to unsecured creditors | 40.46% |

As this comparison demonstrates, the non-student loan unsecured creditors are better off under the proposed plan treatment than at the baseline.

Several courts have approved this outcome in above-median debtor cases. In *In re Sharp*, a case in the District of Colorado, several sets of debtors proposed to pay their student loans pro-rata with the other unsecured creditors and to make additional payments outside their plans from income other than the disposable income they had committed to the plan.[18]

> That these Debtors have excess income for student loan payments is a function of the historical PDI calculation imposed by BAPCPA, rather than any attempt to evade the

---

[18] 415 B.R. 803 (Bankr. D. Colo. 2009).

-7-

payment of their PDI.[19]

In *Sharp*, the Trustee did not complain about the extra-plan payment with discretionary income; rather the complaint concerned forcing the unsecured creditors to share the pro rata distribution with the student loan creditors. The court there held that the pro rata student loan payments were also permissible because the loans were unsecured claims that the debtor could pay under § 1322(b)(1) (allowing a class of unsecured claims to be designated) and long term debt payments that could be made under § 1322(b)(5) (allowing the cure of any default and maintaining of any payments on debts whose last payment will be due after the plan's final payment is due).[20]

Another bankruptcy judge in the District of Colorado has held to the contrary, albeit on different facts. In *In re Kubeczko*, the below-median debtor proposed to pay current student loan monthly payments as payments on a long-term debt under § 1322(b)(5) while also paying the student loan creditor pro rata with the other unsecured creditors inside the plan.[21] This debtor had no disposable income. Over the life of the 36-month plan, the student loan creditor would have received a 47% dividend while the other unsecured creditors would only get 0.27%. By comparison, paying the student loan creditor pro rata without discriminating against the unsecured creditors would yield everyone a dividend of 8.06%. The court concluded that even if a student loan is eligible to be treated as a long term debt under § 1322(b)(5), the treatment still has to pass muster under §

---

[19] *Id.* at 812.

[20] *Id. See also In re Abaunza*, 452 B.R. 866 (Bankr. S.D. Fla. 2011) (what above median debtors are required to pay under means test is "essentially the pot" that unsecured creditors must receive; as long as they receive it, paying a non-dischargeable claim from funds not in the "pot" is permissible).

[21] 2012 WL 2685115 (Bankr. D. Colo., July 6, 2012) (Tallman, C.J.).

-8-

1322(b)(1) – any discrimination among classes cannot be unfair.[22] The hardship to the unsecured class as a whole must be balanced against the harm suffered by the debtor if the proposed treatment were disapproved. In *Kubezcko,* the dividend received by the student loan creditor was 47 times that received by the dischargeable creditors and therefore violated § 1322(b)(1) even though it complied with § 1322(b)(5).[23]

In our case, the Trustee suggests that *Kubezcko* supports denying Stull the opportunity to pay his student loan from funds outside the pot. But because Kubezcko is a below-median debtor, his case is distinguishable. Because a below median debtor necessarily pays his unsecured creditors his disposable income based upon income and *actual* expenses rather than upon a projection derived from the means test, he may have no "discretionary" income.[24] Whatever he pays the student loan will necessarily diminish what he can pay the other unsecured creditors.

The proposed treatment also yields the unsecured creditors funds in excess of the baseline. If the student loans were paid pro rata with the other unsecured claims, all would receive a 40 percent. Under Stull's proposed plan, the non-student loan creditors would receive a dividend of 49 percent. I hold on these facts that a similarly situated above-median debtor may separately classify

---

[22] *See also In re Boscaccy,* 442 B.R. 501 (Bankr. N.D. Miss. 2010) (analyzing three cases where debtor separately classified student loan debt under § 1322(b)(5)'s cure and maintenance of long term debt to determine whether they unfairly discriminated against general unsecured creditors in violation of § 1322(b)(1)).

[23] There is nothing in the record in the present case that indicates what the amount of the contractual payments on the student loan is, nor can I tell that the last payment will come due after the last plan payment. Section 1322(b)(5) may well not even apply here.

[24] *Cf.* § 1325(b)(2)(A)(i) versus § 1325(b)(3). Only to the extent that a below median income debtor's current monthly income (CMI), a historical figure, differs from a debtor's actual income on Schedule I would the possibility of discretionary income exist. But in *Kubezcko*, the below median debtor had no "discretionary income."

-9-

and pay a non-dischargeable obligation from income he or she earns in excess of the projected disposable income that must be committed to the unsecured pot. If that were the extent of the treatment proposed for the student loan creditor here, it would be approved.

But it isn't. Stull also proposes to pay the Department of Education interest on its non-dischargeable claim. This § 1322(b)(10) clearly prohibits. Added by BAPCPA in 2005, that subsection provides that a plan may–

> . . . provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid *only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims*;[25]

This language is plain: in the absence of "full payment of all allowed claims," an unsecured non-dischargeable claim may not receive interest. In *Kubezcko*, the debtor proposed to pay interest on the student loan claims, arguing that paying interest was a necessary component of curing the default and maintaining the payments on this long-term debt.[26] The court there concluded that the later-enacted and very specific terms of (b)(10) trump the earlier and more general provisions of § 1322(b)(5).[27]

---

[25] § 1322(b)(10). *See generally* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 459.1, SEC. REV. July 26, 2007, www.Ch13online.com.

[26] Section 1322(b)(5), the long-term debt provision, permits a debtor to cure any default and maintain original contract payments on any unsecured or secured claim for which the final payment is due after the last plan payment is due.

[27] 2012 WL 2685115 at *6 (noting (b)(10)'s "severely limiting" effect of any treatment of a nondischargeable unsecured debt in a chapter 13 plan that involves the payment of interest on the debt). As a matter of statutory interpretation, where two provisions cannot be harmonized, the later enacted, more specific will control over the earlier, more general statute. *Id.*; *In re Edmonds,* 444 B.R. 898, 902 (Bankr. E.D. Wis.) (Stating that (b)(10) is "very clear in its wording.").

In *In re Freeman,* one bankruptcy court concluded that § 1322(b)(5) and (b)(10) presented an irreconcilable conflict and led that court to conclude that (b)(5) was the more specific provision and controlled over the more general (b)(10).[28] But the court appears to reason that applying (b)(10) would render (b)(5) superfluous. It stated:

> . . . the Court concludes that Congress intended to permit the cure and maintenance of long-term unsecured debts, notwithstanding the applicability of section 1322(b)(10). As noted above, prohibiting the payment of interest on nondischargeable debts would make the cure and maintenance of <u>any</u> long-term debt impermissible. Such a result could not have been intended by Congress.[29]

While it is true that a long-term debt treated under (b)(5) is nondischargeable by virtue of § 1328(a)(1), only *unsecured* nondischargeable debt is subject to (b)(10).[30] And (b)(10) is not an outright proscription on payment of post-petition interest on an unsecured nondischargeable debt; payment of interest is *conditioned* upon paying all allowed claims in full. In short, the *Freeman* court's statement that (b)(10) "would make the cure and maintenance of any long-term debt impermissible," simply reads and applies (b)(10) beyond its plain language.[31] I conclude that (b)(5) and (b)(10) are not irreconcilable and choose to enforce the plain language of (b)(10) where applicable.

---

[28] 2006 WL 6589023 at *2 (Bankr. N.D. Ga. 2006) (Congress intended to permit the cure and maintenance of long-term unsecured debts, notwithstanding § 1322(b)(10)). *See also, In re Webb*, 370 B.R. 418 (Bankr. N.D. Ga. 2007) (following *Freeman,* and concluding that § 1322 (b)(5) controlled over less specific provision (b)(10); section 1322(b)(10) "is inapplicable" to proposed treatment of maintaining direct payments on long-term student loan debts).

[29] *Freeman* at *2. [Emphasis added]

[30] For example, § 1322(b)(10) would not be implicated in the situation where a debtor proposes to cure and maintain a secured home mortgage under § 1322(b)(5).

[31] *See* Cameron M. Fee, *An Attempt at Post-Mortem Revival*, AM. BANKR. INST. J. (July 2012) questioning the reasoning of *Freeman.*

-11-

Stull makes no argument in support of paying interest here. The statute's "full payment" language seems incapable of another interpretation and is in accord with basic bankruptcy distribustion principles. It is inequitable to allow a nondischargeable claim interest while refusing to pay the other creditors in full when, unlike the other unsecured creditors, the student loan claim holder will have the means of collection after the plan is complete. Because the Stull plan runs afoul of this provision, it cannot be confirmed.[32]

In conclusion, while the plan does not unfairly discriminate by providing for this above median debtor to pay his student loan claim from funds he receives in excess of his projected disposable income, his added offer to pay interest on the student loan while only partially paying the other allowed claims cannot be permitted under § 1322(b)(10). Confirmation is DENIED; the debtor may submit an amended plan consistent with the provisions of this Order within 21 days of its entry.

# # #

---

[32] *In re Edmonds, supra* (payment of post-petition interest on student loan debt not permitted by § 1322(b)(10) when not all unsecured claims will be paid in full).